815 F.2d 80
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charlotte ADKINS, Defendant-Appellant.
 No. 85-5895.
 United States Court of Appeals, Sixth Circuit.
 Feb. 3, 1987.
 
 Before JONES and RYAN, Circuit Judges and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Charlotte Adkins appeals her conviction for passing falsely altered money orders in violation of 18 U.S.C. Secs. 2 and 500 (1982). She alleges that she was denied effective assistance of counsel. We affirm the judgment of conviction.
 
 
 2
 In May 23, 1985, a federal grand jury sitting in the Eastern District of Kentucky returned a six count indictment against Charlotte Adkins and Annette Stamper. The six count indictment alleged that the two had altered and passed six duly issued Postal Service money orders. Adkins retained Samuel F. Kibbey as her attorney in the matter. She was arraigned on the charges contained in the indictment on May 31, 1985. She appeared in court at that time and pled not guilty to all six counts.
 
 
 3
 The money orders underlying the indictment had been issued by the U.S. Postal Service as follows:
 
 
 4
 Count Date Amount
1 March 2, 1985 $12.02
2 March 2, 1985 $11.14
3 March 2, 1985 $11.04
4 March 2, 1985 $12.40
5 March 2, 1985 $11.04
6 March 4, 1985 $10.84
 
 
 5
 Each money order was altered by adding a 4 in front of the issued amount, raising the value of each by $400. Each money order bore a false endorsement when cashed. The money orders were cashed at the following locations on the following dates:
 
 
 6
 Count Location City Date
1 Freight Station Liquor Morehead, Ky. March 2, 1985
2 Allen's IGA Morehead, Ky. March 2, 1985
3 Pic Pac Flemingsburg, Ky. March 3, 1985
4 Maloney's Flemingsburg, Ky. March 3, 1985
5 Convenient East Morehead, Ky. March 3, 1985
6 Allen's IGA Morehead, Ky. March 4, 1985
 
 
 7
 On the evening of March 4, 1985, at about 7:30 p.m., the money order at issue in Count 6 was cashed for the sum of $410.84. At approximately 11:30 p.m. that evening, Morehead, Kentucky police received a call from Convenient East stating that a woman in a Jeep vehicle, who had cashed a money order at the store the night before, had again tried to cash a money order. Shortly thereafter, Officer Richard Ingold stopped a 1979 Jeep Wagoneer driven by Adkins. Stamper was the only passenger in the vehicle at that time. Stamper identified herself to the officer as Betty Amburgey. A consent search was made of the vehicle and two purses found therein. A purse later identified as belonging to Stamper contained identification cards bearing the name used in cashing the money orders (Betty Amburgey). Adkins' purse contained $400 to $500. A cash receipt from Allen's IGA dated March 2, 1985, was found in the glove compartment. The vehicle also contained food items bearing Allen's IGA labels. Adkins identified Stamper as Betty Amburgey and told the police that she had not been to Allen's IGA on March 4th. Adkins further stated that she had driven Ms. Amburgey around in Morehead, Kentucky on March 3rd and 4th, but denied being in Morehead on March 2nd. She also denied purchasing money orders, or having been in Flemingsburg, Kentucky, or having any knowledge of Ms. Amburgey's activities relating to cashing money orders.
 
 
 8
 Adkins was brought to trial on September 9, 1985. She was represented by Kibbey during the trial. Stamper entered a plea of guilty to Count 1 of the indictment and agreed to testify against Adkins. Stamper testified that Adkins had been present when each money order was filled out and had driven her in a Jeep Wagoneer to each location where a money order was cashed. Stamper further testified that Adkins had assisted her in obtaining false identification and had received two-thirds of the proceeds.
 
 
 9
 The government called 12 other witnesses against Adkins. Testimony was presented that, as to the money orders cashed on March 2, 1985, Stamper was seen entering the passenger side of a Jeep being driven by an unidentified female. Further testimony was presented that Adkins was the person who had purchased the money orders underlying Counts 1, 2, 3, and 4.
 
 
 10
 Kibbey called Adkins to the stand to testify on her own behalf. He also called two other witnesses to testify on behalf of the defense. Franklin J. Carter was called in an attempt to impeach Stamper's credibility. Robert Bailey was also called, but he did not answer the court's subpoena. At this point, Kibbey rested his defense of Adkins and moved for a judgment of acquittal, which was denied. The jury found Adkins guilty of all six counts on September 9. When the verdict was announced, Kibbey declined the opportunity to poll the jury on its verdict.
 
 
 11
 On September 20, 1985, Ms. Adkins filed a pro se motion for a new trial. In support of the motion, Adkins asserted that, to her knowledge, Kibbey had failed to interview any of the prospective witnesses she had identified and asked him to interview. Adkins also claimed that Kibbey had failed to subpoena any of the witnesses that she had asked him to subpoena. Adkins' motion for a new trial further alleged that she did not receive fair representation. In effect, her motion for a new trial alleged ineffective assistance of counsel.
 
 
 12
 Adkins subsequently filed the statements of three persons in support of her motion with the court. The statement of Keith Whitten described his understanding that Kibbey would contact him before Adkins' trial. On September 7, 1985, two days prior to the trial, Whitten was told by Kibbey that he would not be needed to testify on September 9, 1985. Kibbey told Whitten that he would more likely be needed to testify on September 10, 1985. Kibbey, however, did not contact Whitten as he said he would during their conversation of September 7, 1985.
 
 
 13
 Clayton and Coadoey Binion also submitted statements in support of Adkins' motion. Both stated that in the presence of themselves and Adkins, Kibbey stated that he would not be offended if Adkins charged him with being incompetent. Both Binions stated that on September 9, 1985, Kibbey stated that he did not feel good on the day of the trial and he had not been able to "get into the defense."
 
 
 14
 Kibbey appeared with Adkins at her sentencing hearing on September 21, 1985. After the court explained to Adkins her right to appeal the conviction, she reminded the court that she had filed a motion for a new trial. The court noted that the only issue she had raised in the motion was an allegation of ineffective assistance of counsel. After commenting on Kibbey's experience as a trial attorney and stating that Kibbey gave her a "vigorous defense," the court overruled the motion. The court then sentenced Ms. Adkins to two years imprisonment on each of the six counts, to be served concurrently, and ordered her to make restitution in the sum of $2,400 to be paid prior to her release from probation and/or parole.
 
 I.
 
 15
 On appeal, Adkins claims that she was denied effective assistance of counsel at her trial. She claims that her attorney made the following errors. First, he failed to investigate and produce witnesses to impeach Stamper. Second, he failed to interview and produce witnesses who would provide her with an alibi on the dates that she had allegedly altered the money orders. Third, he failed to file a motion for a new trial.[1]
 
 
 16
 The Supreme Court addressed the issue of ineffective assistance of counsel in Strickland v. Washington, 104 S.Ct. 2052 (1984). The Court noted that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 2064. The Court stated that in order to have a conviction reversed, a defendant must: "First, ... show that counsel's performance was deficient..... Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 2068.
 
 
 17
 Thus, a person claiming ineffective assistance of counsel must prove, first, that counsel's performance was deficient and, second, that she was prejudiced by counsel's performance. Adkins completely fails to prove that she was prejudiced by her counsel's performance. First, there is an overwhelming amount of evidence in support of the conclusion that Adkins was guilty of the crime with which she was charged. As the district court aptly noted, "if you would have had F. Lee Bailey in here or someone that enjoys his reputation, the outcome would have been exactly the same."
 
 
 18
 Adkins' ineffectiveness claims rests on two alleged errors by her counsel. The first was his failure to file a motion for a new trial. Although her counsel did fail to file a motion for a new trial, Ms. Adkins did file such a motion pro se. Although the motion was not timely filed, the district court did consider it. Therefore, Adkins was not prejudiced in this regard.
 
 
 19
 The second alleged error by counsel is that he failed to investigate and present witnesses who would have impeached Stamper and provided an alibi for Adkins. In light of the overwhelming evidence against Adkins, it is highly doubtful that, even if these witnesses had been produced, the outcome of the trial would have been different. Consequently, Adkins was not prejudiced in this regard either.
 
 
 20
 Therefore, the judgment of conviction is AFFIRMED.
 
 
 21
 RYAN, Circuit Judge (concurring in part; dissenting in part).
 
 
 22
 While I concur in the judgment of my colleagues that the defendant's conviction should be affirmed, I must respectfully dissent from my brothers' opinion in this case because I am satisfied that both the district court and this court are without jurisdiction to consider the appellant's ineffective assistance of counsel claim.
 
 
 23
 The ineffectiveness of counsel claim was raised in the district court in the appellant's pro se motion for a new trial, filed pursuant to Rule 33 of the Fed.R.Crim.P.
 
 That rule states, in part:
 
 24
 "The court on motion of a defendant may grant a new trial to him if required in the interest of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7-day period."
 
 
 25
 The requirement of Rule 33 that the new trial motion "shall be made within 7 days after verdict or finding of guilty" is jurisdictional. United States v. Lara-Hernandez, (9th Cir.1948) citing Marion v. United States, 171 F.2d 185, 186 (9th Cir.1948).
 
 
 26
 The court is without power to consider an untimely motion for a new trial. Wright, Federal Practice & Procedure, Criminal 2d Sec. 558; U.S. v. Smith, 1947, 67 S.Ct. 1330, 331 U.S. 469, 91 L.Ed. 1610.
 
 
 27
 The motion in this case was untimely. The verdict was returned on September 9, 1985, and the new trial motion was filed on September 20, 1985. Since there was no claim that the motion was based upon "newly discovered evidence," it was required to be filed not later than September 18, 1985, since Saturdays and Sundays are excluded from the running of the seven days provided for in the rule.
 
 
 28
 We cannot acquire jurisdiction of a district court's decision on a new trial motion if the district court was without jurisdiction to entertain the motion. That is the situation here.
 
 
 29
 Considerations of the efficient administration of justice, certainly a logically compelling reason for considering the ineffectiveness claim on this appeal, cannot confer jurisdiction we do not have.
 
 
 30
 I would affirm the conviction on this direct appeal because the verdict of the jury is amply supported by the evidence but, for the reasons stated, I do not think we are free to reach the ineffective assistance of counsel claim at this time.
 
 
 
 [1]
 Generally, the procedure for pursuing a claim of ineffective assistance of counsel is through a 28 U.S.C. Sec. 2255 (1982) collateral attack. See, e.g., United States v. Birges, 723 F.2d 666, 670 (9th Cir.), cert. denied, 104 S.Ct. 1926 (1984). The reason for this is because such a claim cannot be properly considered "without the development of facts outside the original record." Id. In this instance, however, facts were developed outside of the record as a result of Adkins filing a motion for a new trial. Therefore, it would be inefficient for us to remand this case for further fact finding when there are sufficient facts in the record before us to resolve the issue