**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 16 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10299 |
| Plaintiff-Appellee, | D.C. No. 2:18-cr-00255-WBS |
| v. | |
| JAQUOREY RASHAWN CARTER. | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Submitted December 10, 2021[**]
San Francisco, California

Before: MURGUIA, Chief Judge, and IKUTA and VANDYKE, Circuit Judges.

Defendant-Appellant Jaquorey Rashawn Carter appeals count one of his conviction involving sex trafficking of a minor, pursuant to 18 U.S.C. § 1591(a)(1), (b)(2). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

Carter was charged with sex trafficking of a minor (count one) and sex

---

[*]  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]  The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1

trafficking by force, threats of force, or coercion (count two) pursuant to 18 U.S.C. § 1591(a)(1), (b)(1), and (b)(2). The first count—sex trafficking of a minor—was based on Carter's alleged trafficking of then-minor Bobbi Thomas, while the second count—sex trafficking by force, threats of force, or coercion—involved Carter's alleged trafficking of Kayla Culbert. Before trial, Carter moved *in limine* to preclude evidence of his alleged involvement in an assault on sex worker Melonie Dyett as impermissible "other act" evidence under Federal Rule of Evidence 404(b) or prejudicial under Rule 403.[1] Antonio Long, an associate of Carter's, trafficked Dyett and brutally assaulted her during the event at issue. The government sought to introduce evidence of the Dyett assault in support of count two of the indictment, alleging that Long's conduct—and Carter's inaction during the incident— contributed to the government's theory regarding the violent and forceful nature of

---

[1] Rule 404(b) states, in relevant part:

> **(b) Other Crimes, Wrongs, or Acts.**
> **(1) Prohibited Uses.** Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> **(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2). Even if the evidence is admissible under Rule 404(b)(2), it must still be excluded pursuant to Rule 403 "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Carter's prostitution enterprise. The court ruled the evidence admissible, and a jury found Carter guilty of both offenses.

Following a series of post-trial motions, however, the district court found that Carter was not involved in the Dyett assault to the degree the government had initially posited. The district court feared the graphic nature of the attack prejudiced the jury's decision-making as to count two. It therefore vacated the jury's verdict as to count two and ordered a new trial pursuant to Federal Rule of Criminal Procedure 33(a) on that count only. The government did not appeal the district court's order vacating the jury verdict and ordering a new trial, nor did it retry Carter on count two.

On September 8, 2020, the district court sentenced Carter to 168 months' imprisonment on count one. Carter now appeals, arguing that because the Dyett assault evidence was just as likely prejudicial to count one as count two, his verdict should similarly be vacated and remanded on count one. Carter also argues that the district court erred by applying a 2-level specific offense characteristic enhancement for "commission of a sex act or sexual contact," pursuant to U.S.S.G. § 2G1.3(b)(4)(A) of the United States Sentencing Commission Guidelines.

"Where a district court errs in admitting other act evidence, we review for harmless error." *United States v. Carpenter*, 923 F.3d 1172, 1181 (9th Cir. 2019) (citing *United States v. Hill,* 953 F.2d 452, 458 (9th Cir. 1991)). If "it is more

3

probable than not that the error did not materially affect the verdict," then the error was harmless, and "[r]eversal is not required." *United States v. Lague*, 971 F.3d 1032, 1041 (9th Cir. 2020), *cert. denied,* 141 S. Ct. 1695, 209 L. Ed. 2d 469 (2021) (quoting *United States v. Bailey*, 696 F.3d 794, 803 (9th Cir. 2012)). The Ninth Circuit has "found harmless error despite the erroneous admission of evidence" where "the properly admitted evidence was highly persuasive and overwhelmingly pointed to guilt." *Id.* (quoting *Bailey*, 696 F.3d at 804).

This Court reviews "a district court's application of the Sentencing Guidelines to the facts of a given case" for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). "A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts." *United States v. Morales*, 108 F.3d 1031, 1035 (9th Cir. 1997).

Federal Rule of Criminal Procedure 33(a) allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33(a); *see also United States v. French*, 748 F.3d 922, 934 (9th Cir. 2014). The burden rests with the defendant, *United States v. Alvarez-Moreno*, 657 F.3d 896, 901 (9th Cir. 2011), and "a motion for new trial is directed to the discretion of the [district] judge," *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981). Such motions are granted only in exceptional circumstances. *Id.*

Here, the district court found that its admission of the Dyett assault evidence warranted a new trial as to count two—but not count one—under Federal Rule of Criminal Procedure Rule 33(a) because Carter had little to no involvement in the Dyett assault, and the evidence did not suggest that Carter ever actually used force against any of the women involved in his enterprise. In fact, on the one occasion of record that Carter allegedly threatened Culbert, she laughed at him. The district court therefore found that the jury was likely unfairly prejudiced by the graphic nature of the Dyett assault evidence when finding that Carter similarly trafficked Culbert using force or threats of force.

We find that any error in admitting evidence of the Dyett assault was harmless as to count one. The government presented overwhelming evidence supporting the sex-trafficking-of-a-minor offense, and the Dyett assault evidence in no way related to Carter's trafficking of Thomas—the then-minor whom Carter was charged with trafficking. *See, e.g.*, *Carpenter*, 923 F.3d at 1183 (finding that, although evidence of drug use was prejudicial under Federal Rule of Evidence 403, such evidence was nonetheless harmless "[c]onsidering the mountain of evidence against" the defendant). Indeed, the sex trafficking of a minor count had nothing to do with prostitution by force or threats of force and instead turned on the fact that Thomas was a minor when she engaged in sex acts as part of Carter's prostitution enterprise. Because it is unlikely that the Dyett assault evidence prejudiced the jury against

5

Carter as to the sex trafficking of a minor count, we affirm the jury's verdict as to count one.

An offense level enhancement under the United States Sentencing Commission Guidelines must generally be supported by a preponderance of the evidence. *See United States v. Valle*, 940 F.3d 473, 479 (9th Cir. 2019). Section 2G1.3(b)(4)(A) triggers a 2-level increase to a defendant's offense level if "the offense involved the commission of a sex act or sexual contact." U.S.S.G. § 2G1.3(b)(4)(A). A "sex act" is defined as:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2). "[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[]." 18 U.S.C. § 2246(3).

Trial evidence supported the district court's finding that Thomas engaged in sex acts and sexual contact, which the jury found persuasive beyond a reasonable doubt. Such evidence therefore far surpasses the preponderance of the evidence standard necessary for the sentencing enhancement. Thomas testified that she began prostituting at the age of 15. She explained that between 2014 and 2016, she engaged in prostitution in Sacramento, Stockton, Sunnyvale, Oakland, and several other cities in Southern California. Thomas also explained that Carter rented hotel and motel rooms to facilitate her prostitution and that her sex acts were advertised on prostitution websites such as Backpage.com and Redbook.

Thomas also testified that, on March 28, 2015—when she was 16 years old—Carter placed her and two adult women in a Sunnyvale, California motel room to engage in prostitution. That room was later raided by the police. "[P]hotographs from the evidence in the room included items consistent with sex acts having already occurred . . . including cash that one could infer came from paying customers, condoms, . . . sex toys," and the women's cell phones all contained online advertisements consistent with soliciting sex.

Carter attempts to argue that Thomas did not *always* engage in sex acts. Even so, "18 U.S.C. § 1591 does not require that the victim actually commit a sex act"; all that is needed is sufficient evidence that a pimp "had plans for [that victim] to be caused to engage in prostitution in the future." *United States v. Hornbuckle*, 784

7

F.3d 549, 553 (9th Cir. 2015) (quoting *United States v. Brooks*, F.3d 1186, 1197 (9th Cir. 2010)).  Accordingly, the evidence presented at trial supports the district court's finding that Thomas engaged in sex acts as well as sexual contact, so the court did not abuse its discretion by properly applying U.S.S.G. § 2G1.3(b)(4)(A).

**AFFIRMED.**